FILED

MAR 1 6 2016

U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | |
| v. ) | No. |
| NUBARIDO KUEBEE, and ) NGOZI KUEBEE, ) | 4:16CR00119 AGF/SPM |
| Defendants. ) | |

**INDICTMENT**

The Grand Jury charges that:

Introduction:

At all times relevant to this indictment:

1.  The Supplemental Nutrition Assistance Program (SNAP) was a government program administered by the Food and Nutrition Service (FNS) of the United States Department of Agriculture (USDA). The SNAP helped qualifying individuals and families purchase food. SNAP benefits were similar to United States currency, in that SNAP recipients purchased food from grocery retailers at the face value of their SNAP benefits. In most states, benefits were provided to recipients on an electronic card that was used like a bank Automatic Teller Machine (ATM) card.

2.  Grocery retailers had to apply to and be approved by FNS to participate in the USDA SNAP. An FNS Program Specialist reviewed the application and requested a contractor to visit the retail location, take photographs of the store, and document the food inventory in the store. Based upon the application and inventory information, a Program Specialist determined

whether the retailer was eligible to participate in the SNAP. An authorization packet was forwarded to the retailer after the retailer's application was approved. The packet included an authorization letter, a copy of the applicable rules and regulations regarding the program, a training book, and a video and/or CD that discussed the requirements of the SNAP.

3. Grocery retailers participated in SNAP only with the authorization of the USDA. The materials provided to the retailer explicitly and clearly informed retailers that the SNAP EBT (Electronic Benefit Transfer) cards can only be used to purchase food. All non-food sales were prohibited through the SNAP EBT cards. Prohibited items included any item that was not food, such as: tobacco products, medicine, electronics, and home décor. The purchase of alcohol and hot foods prepared in store for purchase were also excluded. The regulations additionally prohibited the receipt of cash from the SNAP EBT card. Retailers were also prohibited from performing "credit sales" wherein ineligible or eligible items were sold to a recipient to be debited at a later time from the recipient's EBT account.

4. To participate in SNAP, authorized grocery retailers agreed to be held liable for all actions of their employees regarding the federal regulations governing SNAP, including all acts of fraud and illegal SNAP and food stamp trafficking. The illegal acquisition of SNAP benefits is a violation of Title 7, United States Code, Section 2024(b).

5. FNS delegated the task of determining eligibility and certifying individual SNAP recipients' eligibility to each individual state. SNAP benefits were issued on a monthly basis to eligible applicants and the SNAP benefits permitted the recipient to purchase eligible food items using EBT debit cards at FNS authorized retail locations. When the recipient presented the EBT card to the retailer to pay for eligible food items, the retailer would use a "point of sale terminal"

that electronically withdrew available SNAP benefits from the recipient's EBT card. The retailer then received a credit to its designated business bank account in the amount of the transaction. The United States, through the FNS system, made the payments to the retailer. Every swipe of an EBT card created a wire transfer from the United States to the retailer.

6. Individuals residing in Missouri applied for SNAP benefits on a State of Missouri application form. Once eligibility was determined by the Missouri Department of Social Services, Family Support Division, the recipient was issued an EBT card that operated much like an ATM card. In Missouri, each SNAP recipient was issued an "EBT Edge card" containing a unique card number and an encrypted Personal Identification Number (PIN) which was chosen by the recipient. Every recipient's monthly SNAP benefits were accessed real-time by using the EBT Edge card at authorized grocery retailers when retailers swiped the card through a "point of sale" terminal. The terminal device transmitted electronic information over telephone lines to conduct the transaction. Recipients entered their personal PIN number for each transaction to verify the requested food purchase transaction.

7. To process EBT SNAP transactions, authorized grocery retailers were provided with a point of sale electronic card reading device by the government. If authorized grocery retailers planned to use the point of sale card reading device for electronic data transactions other than SNAP, such as credit card and ATM bank debit transactions, then retailers had to independently lease a point of sale terminal from a private, non-government, processor. Those private processors were referred to as "third party processors." When qualified recipients made food purchases, the EBT system electronically debited recipients' SNAP benefit accounts in real time. Authorized grocery retailers eventually received credit for food sale transactions when

3

they received reimbursement payments from federally appropriated funds. The funds were transmitted via electronic funds transfers into financial accounts designated by the authorized grocery retailers.

8. In Missouri, "e-Funds" was the processing company to provide the processing services for EBT SNAP benefits. Authorized grocery retailers that used government point of sale terminals received EBT SNAP disbursements directly from e-Funds. Authorized grocery retailers that used third party processor point of sale terminals received EBT SNAP disbursements form the United States government through e-Funds and their third party processor's bank. E-Funds settled and reconciled each retailer's SNAP activity at the end of each business day.

9. African Grocery Store (hereinafter "Store") at 4075 South Grand Avenue, St. Louis, Missouri as a small convenience store type business that was owned and operated by Nubarido Kuebee and authorized to participate in SNAP. Ngozi Kuebee is believed to be Nubarido Kuebee's wife and was an employee at the Store.

10. The defendant Nubarido Kuebee was authorized to participate in SNAP at the Store on September 2, 2010.

11. Upon authorization to participate in SNAP, a point of sale terminal issued for use at the Store facilitated the redemption of SNAP benefits for the purchase of authorized food items.

12. Nubarido and Ngozi Kuebee swiped customers' EBT Edge cards and the customer typically entered a PIN number through the point of sale terminal. The point of sale

terminal then electronically withdrew available SNAP benefits. The Store's bank account received a bank deposit credit for the transaction's value.

13. Nubarido and Ngozi Kuebee permitted customers to redeem SNAP benefits from EBT Edge cards for non-qualified items such cleaning supplies, personal care items, diapers, cash, and cigarettes.

## COUNT I

### (Supplemental Nutrition Assistance Program Fraud)

15. The allegations contained in paragraphs one through fourteen are re-alleged and incorporated as if fully set forth in this paragraph.

16. On or about September 11, 2012, in the Eastern District of Missouri, defendant,

**NUBARIDO KUEBEE,**

knowingly acquired and possessed United States Department of Agriculture Supplemental Nutrition Assistance Program benefits having a value of one hundred fifty eight dollars and sixty eight cents ($158.68), in a manner contrary to Chapter 51, Title 7 of the United States Code and the regulations issued pursuant to said chapter, in violation of Title 7, United States Code, Section 2024(b).

## COUNT II

### (Supplemental Nutrition Assistance Program Fraud)

17. The allegations contained in paragraphs one through fourteen are re-alleged and incorporated as if fully set forth in this paragraph.

18. On or about June 21, 2013, in the Eastern District of Missouri, defendants,

**NUBARIDO KUEBEE, and
NGOZI KUEBEE,**

knowingly acquired and possessed United States Department of Agriculture Supplemental Nutrition Assistance Program benefits having a value of three hundred fifty dollars and forty eight cents ($350.48), in a manner contrary to Chapter 51, Title 7 of the United States Code and the regulations issued pursuant to said chapter, in violation of Title 7, United States Code, Section 2024(b) and Title 18, United States Code, Section 2.

## COUNT III

### (Supplemental Nutrition Assistance Program Fraud)

19. The allegations contained in paragraphs one through fourteen are re-alleged and incorporated as if fully set forth in this paragraph.

20. On or about August 14, 2013, in the Eastern District of Missouri, defendant,

**NUBARIDO KUEBEE,**

knowingly acquired and possessed United States Department of Agriculture Supplemental Nutrition Assistance Program benefits having a value of five hundred sixteen dollars and thirty nine cents ($516.39), in a manner contrary to Chapter 51, Title 7 of the United States Code and the regulations issued pursuant to said chapter, in violation of Title 7, United States Code, Section 2024(b).

## COUNT IV

### (Supplemental Nutrition Assistance Program Fraud)

21. The allegations contained in paragraphs one through fourteen are re-alleged and incorporated as if fully set forth in this paragraph.

22. On or about August 30, 2013, in the Eastern District of Missouri, defendants,

**NUBARIDO KUEBEE, and
NGOZI KUEBEE,**

knowingly acquired and possessed United States Department of Agriculture Supplemental Nutrition Assistance Program benefits having a value of two hundred thirteen dollars and ninety nine cents ($213.99), in a manner contrary to Chapter 51, Title 7 of the United States Code and the regulations issued pursuant to said chapter, in violation of Title 7, United States Code, Section 2024(b) and Title 18, United States Code, Section 2.

## COUNT V

### (Supplemental Nutrition Assistance Program Fraud)

23. The allegations contained in paragraphs one through fourteen are re-alleged and incorporated as if fully set forth in this paragraph.

24. On or about December 19, 2013, in the Eastern District of Missouri, defendant,

**NUBARIDO KUEBEE,**

knowingly acquired and possessed United States Department of Agriculture Supplemental Nutrition Assistance Program benefits having a value of three hundred nine dollars and twenty four cents ($309.24), in a manner contrary to Chapter 51, Title 7 of the United States Code and the regulations issued pursuant to said chapter, in violation of Title 7, United States Code, Section 2024(b).

## COUNT VI

**(Supplemental Nutrition Assistance Program Fraud)**

25.   The allegations contained in paragraphs one through fourteen are re-alleged and incorporated as if fully set forth in this paragraph.

26.   On or about April 8, 2014, in the Eastern District of Missouri, defendants,

**NUBARIDO KUEBEE, and
NGOZI KUEBEE,**

knowingly acquired and possessed United States Department of Agriculture Supplemental Nutrition Assistance Program benefits having a value of two hundred thirty six dollars and seventy five cents ($236.75), in a manner contrary to Chapter 51, Title 7 of the United States Code and the regulations issued pursuant to said chapter, in violation of Title 7, United States Code, Section 2024(b) and Title 18, United States Code, Section 2.

## COUNT VII

**(Supplemental Nutrition Assistance Program Fraud)**

27.   The allegations contained in paragraphs one through fourteen are re-alleged and incorporated as if fully set forth in this paragraph.

28.   On or about December 23, 2014, in the Eastern District of Missouri, defendant,

**NUBARIDO KUEBEE,**

knowingly acquired and possessed United States Department of Agriculture Supplemental Nutrition Assistance Program benefits having a value of five hundred sixteen dollars and thirty nine cents ($298.59), in a manner contrary to Chapter 51, Title 7 of the United States Code and the regulations issued pursuant to said chapter, in violation of Title 7, United States Code, Section 2024(b).

## FORFEITURE ALLEGATION

The Grand Jury further finds by probable cause that:

29. Pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2561(c), upon conviction of an offense in violation of Title 7, United States Code, Section 2024(b), the defendants shall forfeit to the United States of America all property, real and personal, used in a transaction, to commit, or to facilitate the commission of the offense(s).

30. Money Judgment: Subject to forfeiture upon a conviction of Counts I through VII is a sum of money equal to the total value of property, real or personal, constituting or derived from any proceeds traceable to such violation(s).

31. If any of the property described above, as a result of any act or omission of the defendant(s):

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

A TRUE BILL.


_____
FOREPERSON

RICHARD G. CALLAHAN
United States Attorney


_____
JEANNETTE S. GRAVISS, #44483MO
Assistant United States Attorney